1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SAMUEL WINDHAM, JR.

11              Plaintiff,                     No. CIV S-05-0954 GEB GGH P

12        vs.

13   CALIFORNIA DEPT. OF                       ORDER and
     CORRECTIONS, et al.,                      FINDINGS & RECOMMENDATIONS
14

15              Defendants.

16   _____/

17   Introduction

18              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

19   1983.  Pending before the court are: 1) defendants' motion to dismiss, filed on July 18, 2006,

20   after which plaintiff filed an opposition to which defendants filed a reply; plaintiff then filed a

21   further response;[1] 2) plaintiff's "motion for discovery," filed on August 7, 2006, seeking the

22   court's assistance in serving defendants Zhu, Wilkerson, and Garcia, has been rendered moot, see

23

24          [1] Defendants' January 11, 2007, reply is untimely pursuant to Local Rule 78-230(m), with
     no explanation offered for the delay in filing.  Plaintiff's putative reply in opposition to
25   defendants' reply, filed on January 29, 2007, is improper as not contemplated by the Federal
     Rules of Civil Procedure and the Local Rules.  The court will exercise its discretion to consider
26   both filings, notwithstanding their procedural defects.

                                                  1

Order, filed on August 16, 2006; and 3) plaintiff's October 24, 2006, request to add prospective

injunctive relief to the relief sought by his amended complaint seeking money damages.

Plaintiff's Allegations

        This case is proceeding on an amended complaint, filed on November 28, 2005.[2]

Plaintiff names eleven (11) defendants who were employed at either California Medical Facility -

Vacaville (CMF) or at California State Prison (CSP)- Solano: Dr. M. Zhu; Sergeant (Sgt.)

Wilkerson; Correctional Officer (C/O) Poe; C/O Moore; C/O Andrada; Dr. Traquina; Correctional

Counselor (CC)-I M.C. Casillas;[3] Captain (Capt.) Garcia; C/O Evans; Lieutenant (Lt.) Pulsipher;

Sgt. Ruiz.[4]  Amended Complaint (AC), pp. 1-2.

        Plaintiff states that he is 54 (or was at the time of the filing of his amended

complaint on 11/28/05), disabled and is a burn victim with full body skin grafts covering 75 to 80

percent of his body.  AC, pp. 2-3.  While, some years ago, plaintiff was assigned to Unit 1 as a

disabled worker coordinator at CMF, he was informed by inmates who were his friends[5] that two

other inmates wanted to get plaintiff fired or written up because he had not helped them make a

bed move from where his plaintiff's boss had moved one of them.  AC, p. 5.  Plaintiff did not

have the authority to do what they wanted, but the two inmates apparently blamed him for the

---

[2] The original complaint was filed on May 16, 2005.

[3] Plaintiff spells this name as "Cassilas," but counsel representing, inter alia, this defendant has corrected it to "Casilas," the spelling the court will use.

[4] The court's review of the amended complaint reveals that plaintiff, at one point, apparently seeks to name a twelfth defendant, Lt. Cano.  However, plaintiff did not identify this individual in the caption of the amended complaint as he did all the others; nor did plaintiff inform the court that he intended to sue this individual as well when he was directed to fill out the appropriate forms to serve defendants or when the court ordered service of the amended complaint; thus, plaintiff has waived the right to seek service of process on this putative defendant.  Moreover, plaintiff's very limited allegations against this would-be defendant, to the extent that he makes any, are far too vague to be colorable.

[5] Plaintiff has subsequently filed a declaration, on October 18, 2006, from an inmate named Siverin Whitney, attesting to, inter alia, his having warned plaintiff of the two inmates who were allegedly trying to set him up to be fired from his prison employment.  This later filed declaration is not relevant for purposes of the pending motion to dismiss.

1   move and became vindictive toward him.  Id.  Plaintiff was cautioned by his friends to watch out

2   for the two inmates.   Id.  One night, plaintiff's housing officer C/O Kelly (not a defendant), in

3   passing out the mail, delivered an envelope to plaintiff containing a few dollars but no return

4   address.  Id.  Plaintiff was not expecting money from his family; he turned it over either to his

5   supervisor, K. Caravello (not a defendant) or to defendant Pulsipher, the unit supervisor because

6   he did not know where the money came from and wanted CMF to find out the source.  Id.

7           While waiting for defendant Evans of the Security Investigation Unit (S&I) to

8   investigate the matter, plaintiff received one or two more money orders also for small amounts,

9   which plaintiff again turned over to C/O Kelly, asking that the situation be looked into and

10  thinking it was the work of the two disgruntled inmates.  AC, p. 6.  Plaintiff and C/O Kelly went

11  to Caravello who notified defendants Garcia, Pulsipher, Ruiz and Evans.  Defendant S&I Officer

12  Evans was told by Caravello and Kelly that plaintiff did not know where the money was coming

13  from.  Id.  Plaintiff contacted his family and friends and found that no one in New York had sent

14  it, so he knew something was wrong.  Id.  Plaintiff waited a few months; defendant Evans called

15  plaintiff into Caravello's office and told him the matter had been investigated, plaintiff was in the

16  clear, and not to worry about it.  Id.   Plaintiff's supervisor went a step further, setting forth the

17  events in a 128 Informative Chrono, indicating plaintiff knew nothing about the money's source,

18  giving plaintiff and Kelly each a copy and placing the chrono in plaintiff's C-file to cover the

19  matter if it arose in the future.  Id.

20          Around a year later, on the morning of December 18, 2003, as plaintiff worked

21  alongside an inmate named Johnson,[6] defendant Poe, who knew plaintiff's medical condition,

22  came in, told plaintiff to stand, searched, grabbed and cuffed him on his skin grafts, causing the

23  grafts to twist, with no explanation.  AC, pp. 3, 6.  Defendant Poe escorted plaintiff to a holding

24  

25          [6] Plaintiff subsequently filed a declaration, on October 18, 2006, from inmate Johnson,
    supporting plaintiff's allegations as to the manner in which defendant Poe handcuffed and
    transported plaintiff from his workstation on December 18, 2003.  This declaration is not relevant
26  for purposes of the pending motion.

1    cell. AC, pp. 6-7. Two more inmates were brought in and placed on either side of plaintiff in

2    separate holding cells. AC, p. 7. Plaintiff was later taken and locked into a holding cell in

3    Receiving and Release (R&R) by defendant Wilkerson. Id. Defendant Wilkerson told plaintiff to

4    strip down; plaintiff was told nothing about why this was being done, nor was he asked if he had

5    any medical problems. Id. Defendant Wilkerson gave plaintiff a blue paper jumpsuit, which

6    plaintiff put on, after which he was cuffed at the wrist, waist and ankles. Id. Defendant

7    Wilkerson was also involved in throwing plaintiff's medical supplies away and did nothing while

8    plaintiff was bleeding at his I.C.C. hearing on 12/24/03. AC, p. 3. Defendant Andrada

9    participated in throwing plaintiff's medical supplies away as well. Id.

10       Plaintiff was taken to a white CDC car with two I.S.U. officers, who took plaintiff

11    to CSP-Solano. AC, p. 7. The metal restraints placed directly onto plaintiff's skin grafts without

12    his leg support jobskin on his legs, began to tear and irritate the graft sites. Id. Defendant Moore

13    from I.S.U. placed handcuffs on plaintiff's grafts more tightly. AC, p. 3. Plaintiff was compelled

14    to walk putting pressure on his legs, which without his jobskin or a wheelchair, caused his burn

15    grafts to break open and bleed. AC, pp. 7-8. Once plaintiff was escorted to CSP-Solano's

16    holding cell in Receiving, all metal restraints were removed from plaintiff's waist, wrist and

17    ankles; at that time, plaintiff felt and observed that the restraints had begun to break down the skin

18    grafts between his legs, lower ankles and upper thighs. AC, p. 8.

19       CSP-Solano's R&R Officer Webb (not a defendant) cuffed plaintiff and took him

20    to the medical station for an examination. AC, p. 8. Plaintiff informed the nurse and Psych.

21    Tech., not defendants, that more than 75 percent of his body was covered with skin grafts, that he

22    needed jobskins and other medical items to keep his grafts medically stable. Id. The nurse asked

23    for plaintiff's medical file, was told that it was coming, and stated that plaintiff could not be

24    accepted or cleared for CSP-Solano without his medical file. Id. When the nurse asked plaintiff

25    if knew why he was being placed in Ad Seg, an officer said that the CDC 114D lock up order was

26    on the way. Id.

1    When plaintiff was returned to his cell and the metal restraints taken off his wrists,

2  he lay down on his back in excruciating pain to take off as much pressure on his legs as possible.

3  AC, p. 8.  Later Webb called plaintiff to the bars, telling him about a CDC 114D Administrative

4  Segregation Unit placement notice, dated 12/18/03, signed by non-defendant Lt. Mirich.  Id.

5  Plaintiff was asked to read and sign the notice to acknowledge it if he understood it.  Id.  The

6  notice stated that plaintiff was being placed in Ad Seg lockup from CMF pending a CMF/ISU

7  investigation into allegations that plaintiff had been involved in pressuring and extortion of an

8  elderly disabled inmate on the CMF mainline.  AC, p. 9.  Plaintiff refused to sign the form

9  because CSP-Solano Capt. Rodriguez, not a defendant, wanted plaintiff to waive his right to a 72-

10 hour preparation period, which would have denied plaintiff his due process rights.  Id.  Plaintiff

11 told Webb that he also would not sign because he knew nothing of the allegations; Webb gave

12 plaintiff a copy of the CDC 114D lockup order and left.  Id.

13    Two unnamed officers came to plaintiff's holding cell and put metal restraints

14 directly on his unprotected burn grafts on his ankles, waist and wrists.  Plaintiff had no medical

15 supplies to reduce leg pressure and was unable to provide himself the daily treatment for his burn-

16 grafted skin and donor sites.  AC, p. 9.

17    Even though defendants Garcia, Pulsipher, Evans and Ruiz were fully aware of

18 what had happened with regard to plaintiff's receipt of the envelopes with money, they did

19 nothing on plaintiff's behalf at any of the I.C.C. hearings.  AC, pp. 3-5.  Plaintiff claims he was

20 illegally transferred to another institution without any prior notification or hearing in violation of

21 his due process rights.  AC, p. 9.  He was transferred without his medical records and when the

22 nurse properly refused to accept him without the records, he was locked up in Ad Seg without any

23 medical treatment.  AC, pp. 9-10.  Plaintiff was denied his medical supplies after CSP-Solano's

24 Dr. Noriega ordered them and was thereby forced to clean and stop the bleeding with his own

25 urine.  AC, p. 10.  Plaintiff claims this to be a violation of the transfer of inmate procedure

26 outlined in Department Operations Manual (DOM) at sections 54046.18 & 54046.18.3.  Plaintiff

1   was basically bed-ridden because he was without his medical supplies and could not go to the yard

2   due to his severe pain mostly from having to keep his legs elevated and he had only his own urine

3   with which to clean his legs.  Id.

4         Plaintiff alleges as to defendant Dr. Zhu, that she cleared plaintiff to be housed in

5   Ad Seg in another prison of which she knew nothing and did nothing to help plaintiff even though

6   she knew he was bleeding while attending three I.C.C. hearings on 12/24/03; on 4/2/04; and on

7   8/13/04.  AC, p. 3.  Defendant Traquina, the Chief Medical Officer (CMO), was well aware of

8   plaintiff's serious medical condition, but ignored plaintiff, which led to numerous wounds,

9   ultimately requiring plaintiff to use a wheelchair, have daily dressing changes and daily whirlpool

10   visits and graft wrappings, which was not necessary before plaintiff was subjected to the treatment

11   of which he complains herein.  AC, p. 4.  Defendant Casillas, at plaintiff's 6/18/04 I.C.C. hearing

12   wrote a chrono clearing plaintiff for transfer without the primary physician or CMO's knowledge.

13   Id.

14         In addition to the alleged due process violations,[7] plaintiff accuses the defendants

15   of conspiracy, saying he has yet to be charged with anything; instead, after being held in Ad Seg

16   for more than a year, he was let out without any apology that a mistake was made or any assurance

17   that any disciplinary measures, etc., would be removed from his C-file.  AC, pp. 10-11.  He claims

18   the actions of defendants were malicious, oppressive and caused him mental and emotional pain.

19   AC, p. 11.  He seeks money damages in the form of compensatory and punitive damages for the

20   severe pain he suffered for over a year by his grafts being broken down and for his being held in

21   Ad Seg while innocent of wrongdoing and for keeping him in maximum security in a prison

22   without a hospital, but only an infirmary inadequate for his medical condition.[8]  AC, p. 12.

23

24      [7] Despite plaintiff's references to due process violations, the gravamen of his allegations implicate the prohibitions of the Eighth Amendment, which is how defendants have construed his claims in their motion to dismiss.

25

26      [8] As noted below, plaintiff will be permitted to supplement his amended complaint with a request for prospective injunctive relief, to the extent appropriate.

1   <u>Motion to Dismiss</u>

2          Defendants move for dismissal pursuant to nonenumerated Fed. R. Civ. P. 12(b),

3   contending that plaintiff failed to exhaust his administrative remedies.

4          <u>*Failure to Exhaust - Legal Standard under Non-Enumerated Fed. R. Civ. P. 12(b)*</u>

5          In a motion to dismiss for failure to exhaust administrative remedies under non-

6   enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

7   raising and proving exhaustion." <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).  The

8   parties may go outside the pleadings, submitting affidavits or declarations under penalty of

9   perjury, but plaintiff must be provided with notice of his opportunity to develop a record. <u>Wyatt</u>

10  <u>v. Terhune</u>, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair notice by order

11  filed on May 8, 2006.

12         Should defendants submit declarations and/or other documentation demonstrating

13  an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing;

14  however, the ultimate burden remains with defendants.  Plaintiff may rely upon statements made

15  under the penalty of perjury in the complaint if the complaint shows that plaintiff has personal

16  knowledge of the matters stated and plaintiff calls to the court's attention those parts of the

17  complaint upon which plaintiff relies.  If the court determines that plaintiff has failed to exhaust,

18  dismissal without prejudice is the appropriate remedy for non-exhaustion of administrative

19  remedies.  <u>Wyatt v. Terhune</u>, 315 F.3d at 1120.

20         <u>*PLRA Requirements*</u>

21         The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

22  "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

23  other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

24  such administrative remedies as are available are exhausted." Inmates seeking injunctive relief

25  must exhaust administrative remedies. <u>Rumbles v. Hill</u>, 182 F.3d 1064 (9th Cir. 1999).  In <u>Booth</u>

26  <u>v. Churner</u>, 532 U.S. 731,121 S. Ct. 1819 (2001), the Supreme Court held that inmates must

1  exhaust administrative remedies, regardless of the relief offered through administrative

2  procedures.  532 U.S. at 741, 121 S. Ct. at 1825.  Therefore, inmates seeking money damages

3  must also completely exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121

4  S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative remedies

5  even where the grievance process does not permit awards of money damages).  42 U.S.C. §

6  1997e(a) provides that no action shall be brought with respect to prison conditions *until* such

7  administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

8  Cir. 2002).

9          *Administrative Exhaustion Procedure*

10              In order for California prisoners to exhaust administrative remedies, they must

11  proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

12  CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

13  third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

14  985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final

15  decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

16          *Defendants' Contentions*

17              Defendants contend that plaintiff failed to exhaust his administrative remedies as

18  to his claims of inadequate medical care in violation of the Eighth Amendment by defendants.

19  Motion to Dismiss (MTD), pp. 1-2.  Defendants claim that plaintiff failed to file inmate appeals

20  for the allegations of his amended complaint.  MTD, p. 3.  Defendants aver that neither the inmate

21  appeals offices of CMF or CSP-Solano contains records of any grievance of plaintiff for the

22  specific claims set forth against each defendant.  Id., at 4 & Exhibit (Exh.) A, Declaration (Dec.)

23  of CMF's inmate appeals coordinator, M. Cry; & Exh. B, Dec. of CSP-Solano inmate appeals

24  coordinator, S. Cervantes.

25              That is, defendants contend that there are no records of any grievance submitted by

26  plaintiff about defendant Zhu concerning treatment (or lack thereof) at I.C.C. hearings on

1   12/24/03, 4/2/04, and 8/13/04; as to defendants Poe and Moore with respect to any injury arising

2   from their placement of handcuffs on plaintiff's skin grafts; as to defendant Andrada concerning

3   plaintiff's medical supplies being thrown away; regarding defendant Traquina's having ignored

4   the seriousness of plaintiff's medical condition and allowing it to deteriorate; as to defendant

5   Casillas' having approved plaintiff for transfer without the knowledge of the primary physician or

6   CMO; and, as to the failure of defendants Garcia, Evans, Pulsipher and Ruiz to investigate the

7   allegations that plaintiff was extorting favors from another inmate and to exonerate plaintiff with

8   regard to them.  MTD, pp. 4-5, Exhs. A & B.  Further, defendants maintain that there is no record

9   of a Director's Level Appeal decision for any appeal that plaintiff may have filed with regard to

10  the allegations of his amended complaint.   MTD, p. 5 & Exh. C, Dec. of Chief of the CDCR

11  Inmate Appeals Branch, N. Grannis.

12         *Plaintiff's Opposition*

13         Plaintiff filed an opposition consisting of some 135 pages, mostly exhibits, not all

14  of which are relevant to the question of exhaustion of administrative remedies.  Within his

15  opposition he largely reiterates the allegations of his amended complaint with the addition of

16  some detail.  He states that he was confined to Ad Seg from December 19, 2003, until August 13,

17  2004, and released to a hospital wing at CMF, where he is still confined due to the bleeding of

18  open wounds from his thighs to his ankles, which began after he had been cuffed on his skin

19  grafts in December, 2003.  Opposition (Opp.), p. 2.  His Ad Seg placement occurred because an

20  investigation was launched into allegations that plaintiff had subjected an elderly inmate to

21  extortion, allegations that plaintiff contends were baseless and which were belied by the chrono

22  previously placed in his prison file, explaining that he had reported and turned over anonymously

23  sent cash/checks (money orders) to staff; that his supervisor, K. Caravello, had referred the matter

24  to defendant Evans to investigate with no finding of any wrongdoing by plaintiff.  Opp., pp. 2-3;

25  Exhs. A & B to Opp.

26  \\\\\

1    He reiterates that on December 19, 2003, a Capt. Rodriguez wanted him to sign a

2    CDC-114D lockup order, waiving a 72-hour notice provision.  Opp., p. 3.  Plaintiff later signed a

3    lockup order, not waiving the 72-hour period, then "concealed both lock-up orders."  Id. & Exh.

4    C.

5    At the 12/24/03 I.C.C. hearing, plaintiff states that, while "bleeding severely" at the

6    hearing, he asked defendant Dr. Zhu to help him or give him his needed medical supplies which

7    he was authorized to have.  Opp., p. 4.  Defendant Zhu replied, in the presence of, inter alia,

8    defendants Wilkerson and Garcia, that plaintiff should fill out a sick call slip, despite the fact of

9    his excessive bleeding that was evident.  Id.  Plaintiff was led back to Ad Seg bleeding and in

10   great pain, asked for a sick call slip, which he received on 12/27/03.  Id.  The I.C.C. chrono for

11   12/24/03, does not make any reference to plaintiff's request for medical help.  Id., & Exh. D to

12   Opp.  Plaintiff states that non-defendant Dr. Thor saw him on 12/29/03, and that he reported to

13   both Drs. Thor and Noriega (also not a defendant) that he was forced to use his own urine to help

14   clean his wounds.  Opp., p. 4.

15   Plaintiff filed two sick call slips, one on 12/27/03, and one on 1/9/04.  Defendant

16   Dr. Traquina was CMO at CSP-Solano.  Opp., p. 5.  Plaintiff repeatedly asked staff for his

17   medical supplies, including the "jobst" support for his legs to no avail.  Id.  Plaintiff states that he

18   filed his first appeal related to this issue; his exhibits indicate that this grievance was filed on

19   1/9/04 (as opposed to a sick call request), indicating that he needed his support hose stockings that

20   had been prescribed for him for years, that he was unable to walk any distance without them, and

21   that his grafts were breaking down.  Id., & Exh. E.  Plaintiff did not receive a response until

22   3/18/04, but evidently withdrew this initial appeal with the understanding that he would receive

23   the prescription "jobst" stocking.  Id.

24   Plaintiff goes on to argue that his reading led him to believe that exhaustion would

25   not be a barrier to the administrative exhaustion process, including as Exh. F, the copy of a book

26   cover, entitled The Rights of Prisoners - The Basic ACLU Guide to Prisoners' Rights.  Opp., p. 6.

1   Plaintiff maintains that from 12/23/03 through 3/25/04, that he was confined to Ad Seg only to

2   come out for dressing changes and to show that he was bleeding.  Opp., p. 6.  He maintains that he

3   repeatedly complained of the lack of his medical supplies and was fearful because infection had

4   begun.  Opp., pp. 6-7.  He kept a journal of what he was going through and has submitted the 45

5   pages of the journal as Exh. G to his opposition.  Opp., p. 7.

6              Plaintiff then sets forth that, on 3/24/04, that he wrote an appeal on a 602 form

7   complaining about his Ad Seg detention and his medical condition, which was rejected, and

8   therefore received no log number, for the stated reason that he had not separated his detention

9   issues from his medical grievances.  Opp., p. & & Exh. H.  On June 6, 2004, in the process of

10  being transferred back to CMF, first to the clinic and then the hospital, due to his severely

11  degraded medical condition, plaintiff gained enough strength to file an appeal, wherein the

12  response from CMF confirms that plaintiff's property, including his medical supplies, were

13  confiscated while plaintiff was at CSP-Solano.  The 9/2/04 first level appeal response is a grant.

14  Within the response, a Corr. Sgt. Spoon (non-defendant) is characterized as having attempted

15  several times to have plaintiff's medical supplies sent from CMF to CSP-Solano, but evidently

16  since plaintiff's placement at CSP-Solano was designated as temporary, his property was stored at

17  CMF.   When the property (primarily medical supplies, apparently) was eventually transported to

18  CSP-Solano on 3/3/04, Sgt. Spoon indicated he was never notified of its arrival so it was never

19  delivered to plaintiff.   Therefore, plaintiff never received his medical supplies while at CSP-

20  Solano from 12/18/03 through 3/26/04 when he was transported back to CMF; furthermore, the

21  property was not located and returned to CMF until 9/2/04.   Exh. I.

22             Plaintiff filed, on July 8, 2004, an appeal with respect to having been medically

23  cleared for transfer without the knowledge of plaintiff's primary care physician and while plaintiff

24  was being treated in the acute care hospital at CMF for his bleeding and painful wounds.  Opp., p.

25  8, Exh. J.  This clearance was approved by the senior counselor, defendant Casillas.  Id.  Plaintiff

26  filed an appeal of the clearance on a CDC Form 1824, not on a CDC-602 Form, but plaintiff's

exhibit includes a first level appeal response to the appeal in the form of a partial grant, indicating that plaintiff would receive all the medical care non-defendant Dr. Low prescribed while under his care, and further stating that plaintiff could not be transferred "unless accepted by a physician at another hospital unit," which evidently restricted any future transfer to Corcoran only.  Exh. J, p. 7.  Plaintiff does not demonstrate that he appealed the first level response's partial grant.

Plaintiff submits a 602 appeal which he initiated on June 6, 2004, wherein he complained of having been illegally housed in Ad Seg.  Opp., p. 8, Exh. K.  He contends that this grievance implicated defendant Evans for having previously investigated and cleared plaintiff of wrongdoing before the allegations with respect to extortion arose, as well as defendants Ruiz, Pulsipher and Garcia.  Id.  He also contends that defendant Wilkerson had been implicated for the confiscation of plaintiff's medical supports in a grievance response that had been signed for by M. Cry.  Plaintiff also asserts that his claims with regard to having been transferred from CMF to CSP-Solano, a facility not capable of providing the level of care plaintiff needed was administratively exhausted at the third level in a decision dated 3/8/05.  Opp., pp. 8-9, Exh. K.  In addition to the ultimate third level decision, filed on 3/8/05, plaintiff includes in Exh. K, a copy of the initial rejection of the appeal at issue on 12/20/04, by N. Grannis, after which plaintiff remedied the appeal defect by including the CDC 128 chrono sought by Grannis on 12/27/04.  Opp., pp. 9-10.

A review of the third level appeal decision, dated 3/8/05, sets forth, inter alia, the following:

> **I. Appellant's Argument:** It is the appellant's position that he has been inappropriately retained in the Administrative Segregation Unit (ASU).  He claims that he did not have any enemy concerns, and there was no justification to retain him in the ASU.  The appellant states that he did not violate any rules, and he requests to be released from the ASU.
>
> II. **Second Level's Decision:** The reviewer found that the appellant was appropriately placed in the ASU pursuant to departmental and institution regulations.  The appellant was under investigation by the institution's Investigative Services Unit for his possible

involvement into a serious allegation of extortion from another
inmate.  To protect the integrity of the on-going investigation, the
appellant was retained in the ASU.  Once the investigation had been
completed, and it had been determined that the appellant no longer
posed a threat to the safety and security of the institution, he was
released from ASU and his credit earning status was restored.  The
appeal was partially granted at the Second Level of Review.

**III.  Director's Level Decision**: Appeal is denied.

**A.  Findings**: The appellant was appropriately placed into the ASU
to ensure the safety and security of the institution.  The CDC rules
require that institutional security and the safety of persons shall take
precedence over all other considerations.  The appellant has failed
to provide any evidence that staff inappropriately retained him in
the ASU without proper cause.

The appellant was placed in ASU due to a safety and security
concern and all of his due process rights were followed pursuant to
departmental regulations.  Relief at the Director's Level of Review
is unwarranted.
.......................................................................................................

This decision exhausts the administrative remedy available to the
appellant within CDC.

Exh. K, p. 2.

Plaintiff's exhibit indicates that in his appeal to the third level, plaintiff included a

two-page attachment which includes his allegations about his deteriorating medical condition,

including that his needed medical items were disposed of causing severe injury to his legs, that he

suffered cruel and unusual punishment at the hands of "all the staff involved in this Ad Seg

placement," that he was kept without medical treatment for the first 21 days and was forced to use

urine and torn sheets to treat himself.  Exh. K, pp. 4-5.

*Reply*

In their extremely belated reply, defendants modify their argument somewhat,

asserting that plaintiff in his opposition did not show that he filed grievances against defendants

Zhu, Poe, Moore and Traquina.  Reply, p. 1.  Although defendants concede plaintiff did

demonstrate that he exhausted administrative remedies with respect to some grievances against

defendant Andrada, Casillas, Garcia, Evans, Pulsipher and Ruiz, they argue that these grievances

1    did not concern disputes related to the claims herein against these defendants.  Reply, pp. 1-2.

2    The court does not find defendants' arguments persuasive, in light of plaintiff's showing and the

3    applicable law, with respect to any defendant but Casilas.

4            *Plaintiff's Response to Reply*

5            Plaintiff's further response complains of the tardiness of defendants' reply, alleges

6    that defendants' mischaracterize his efforts at administrative exhaustion and seeks to strengthen

7    his claims with regard to exhaustion.

8            *Discussion*

9            In <u>Jones v. Bock</u>, <u>supra</u>, ___ S. Ct. ___, 2007 WL 135890 at *12 (Jan. 22, 2007),

10   the Supreme Court has very recently clarified:

11               In <u>Woodford</u> [<u>v. Ngo</u>], we held that to properly exhaust
                 administrative remedies prisoners must "complete the
12               administrative review process in accordance with the applicable
                 procedural rules."  548 U.S. at ___ (slip op., at 5) - rules that are
13               defined not by the PLRA, but by the prison grievance process itself.
                 Compliance with prison grievance procedures, therefore, is all that
14               is required by the PLRA to "properly exhaust."  The level of detail
                 necessary in a grievance to comply with the grievance procedures
15               will vary from system to system and claim to claim, but it is the
                 prison requirements, and not the PLRA, that define the boundaries
16               of proper exhaustion.  As the MDOC's procedures make no
                 mention of naming particular officials, the Sixth Circuit's rule
17               imposing such a prerequisite to proper exhaustion is unwarranted.

18   Thus, it is the state's regulations governing the inmate appeal process that determines the level of

19   specificity required to be set forth in the grievance.  Defendants have not pointed out where in the

20   governing state procedures it is required that plaintiff name each defendant in his administrative

21   appeals regarding the period of time when he was placed in Ad Seg and allegedly deprived of

22   medical treatment and his medical supplies.  The court's own review notes that CAL. CODE REGS.

23   tit.xv, § 3084.1(a), states, in relevant part, that "[a]ny inmate or parolee under the department's

24   jurisdiction may appeal any departmental decision, action, condition, or policy which they can

25   demonstrate as having an adverse effect upon their welfare."  The pertinent portion of CAL. CODE

26   REGS. tit.xv, § 3084.2 (a) states simply that "[t]he appellant shall use a CDC Form 602 [],

14

1    Inmate/Parolee Appeal Form, to describe the problem and action requested." Thus, the

2    regulations appear to state in this context only that adequate contours of the grievance need be

3    framed.

4            That is, the PLRA requires prisoners to use the administrative process that the state

5    provides but does not require more.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005)

6    (reversing the district court's dismissal of defendants not named in the prisoner's inmate appeal

7    because the form at issue "did not require identification of any specific persons").  "A prison

8    appeal need not name each defendant named in a subsequent federal action as a matter of law."

9    Tillis v. Lamarque, No. C 04-3763 SI, 2006 WL 644876, at *4 (N.D. Cal. Mar. 9, 2006) (finding

10   that the CDC 602 inmate appeal form "does not require anyone to be named").  See also Lewis v.

11   Mitchell, 416 F. Supp 2d 935, 941-42 (S.D. Cal. 2005) (holding that the CDC 602 inmate appeal

12   form does not require an inmate to name or identify specific persons and adopting the magistrate

13   judge's finding that the inmate sufficiently exhausted administrative remedies as to all defendants

14   even though only two defendants were named in the inmate appeal).

15           With respect to defendants Zhu; Wilkerson; Poe; Moore; Andrada; Traquina;

16   Garcia; Evans; Pulsipher; and Ruiz, while plaintiff did not specifically name each individually in

17   the administrative appeal process, he did exhaust his claims to the third level regarding the

18   conduct of any prison staff that participated in his having been placed in Ad Seg, the manner in

19   which he was transported from CMF to CSP-Solano, and the lack of medical care for his acute

20   medical needs while at CSP-Solano.  That in the third level appeal decision, the Chief of Inmate

21   Appeals chose not to specifically address the medical issues raised by plaintiff does not signify

22   that plaintiff did not raise them.   Therefore, the court finds that plaintiff has adequately exhausted

23   the available administrative remedies as to ten of the defendants and the motion to dismiss as to

24   these individuals should be denied.

25           As to defendant Casilas for whom plaintiff's claim with regard to his having

26   cleared plaintiff for transfer in June, 2004, after plaintiff had been returned to CMF in late March

1   2004, without receiving plaintiff's doctor's clearance, the court finds that that claim has not been

2   exhausted.  It concerns events not directly related to plaintiff's being placed in Ad Seg and having

3   been deprived of adequate medical care and supplies that implicates the other defendants.

4   Plaintiff makes no showing that he appealed this grievance beyond the first level response.  This

5   court will recommend dismissal of plaintiff's claims against this defendant as unexhausted, but

6   will recommend that this action proceed against the other defendants. Jones v. Bock, ___ S. Ct.

7   ___, 2007 WL 135890 at *13-15 (proper procedure is to dismiss only unexhausted claims); Lira v.

8   Herrera, 427 F.3d 1164 (9th Cir. 2005) (rejecting total exhaustion-dismissal rule for civil rights

9   actions containing administratively unexhausted claims).

10              *Request to Add Injunctive Relief Claims*

11              Plaintiff filed, on October 24, 2006, a subsequent request for injunctive relief to be

12   added to the relief he seeks for the Eighth Amendment violations that he states that he suffered in

13   the form of inadequate medical care and cruel and unusual punishment.  Defendants have filed no

14   opposition to the request.  Nevertheless, some of the relief he seeks, such as "modification" of

15   sentence is not appropriate in the context of a § 1983 action.  To the extent that plaintiff seeks to

16   clarify his Eighth Amendment claims and asks for prospective injunctive relief that may be

17   apposite, however, the court will, on this occasion, permit a supplement to the relief requested by

18   the amended complaint.

19              Accordingly, IT IS ORDERED that:

20              1.  Plaintiff's "motion for discovery," filed on August 7, 2006, is denied as moot;

21   and

22              2.  Plaintiff's October 24, 2006, unopposed request to add a request for prospective

23   injunctive relief to the relief sought by his amended complaint is granted to the limited extent that

24   such relief sought is appropriate.

25              IT IS RECOMMENDED that defendants' motion to dismiss the amended

26   complaint, filed on July 18, 2006, for failure to exhaust administrative remedies be granted in part

1    and denied in part, as follows:

2             a. GRANTED as to defendant Casilas and this defendant be dismissed from this

3    action;

4             b. DENIED as to defendants Zhu; Wilkerson; Poe; Moore; Andrada; Traquina;

5    Garcia; Evans; Pulsipher; and Ruiz, and that these defendants be directed to file an answer to the

6    amended complaint within thirty days of the adoption of these findings and recommendations,

7    should that occur.

8             These findings and recommendations are submitted to the United States District

9    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

10   days after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13   shall be served and filed within ten days after service of the objections.  The parties are advised

14   that failure to file objections within the specified time may waive the right to appeal the District

15   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16   DATED: 2/15/07

                                     /s/ Gregory G. Hollows

17                                   _____

18                                   GREGORY G. HOLLOWS
                                     UNITED STATES MAGISTRATE JUDGE

19   GGH:009
     wind 0954.mtd+

20

21

22

23

24

25

26